**Mae Willie WILLIAMS, Plaintiff,**

**v.**

**GREYHOUND LINES, INC., a California corporation; B.F. Allen, Defendants.**

**Civ. A. No. 83–G–0603–W.**

United States District Court, N.D. Alabama, W.D.

Nov. 4, 1983.

David M. Andres, Kennedy, Andres & Adams, Tuscaloosa, Ala., for plaintiff.

Wilbor J. Hust, Jr., Zeanah, Donald & Hust, Tuscaloosa, Ala., for defendants.

## MEMORANDUM OPINION

GUIN, District Judge.

This slip-and-fall case came before the court on motion for summary judgment filed by the defendants. The motion raises several interesting questions: first, whether the degree of care imposed on carriers under Alabama law requires a bus driver to continuously inspect the stairwells after each passenger disembarks; second, assuming that this duty does exist, whether it extends to the removal of particles or debris that normally are not the subject of a slip-and-fall case; and third, whether a claim of this type is actionable without the injured party having actually slipped on the debris. The plaintiff is an Alabama resident. The defendant company, Greyhound Lines, Inc., is a California corporation with its principal place of business in Arizona. The defendant bus driver, B.F. Allen, is a Louisiana resident.

On September 26, 1982, plaintiff was traveling as a passenger on a Greyhound Lines bus en route from Atlanta, Georgia, to Tuscaloosa, Alabama. During a short layover in Birmingham, the plaintiff was required to change buses, at which time she boarded the subject bus. Before leaving Birmingham the bus driver inspected the stairwells of the bus. No debris or particles were observed on them.

The agreed facts are that when the bus reached Tuscaloosa the bus driver again inspected the stairwells before any passenger exited the bus, and again did not observe debris of any sort on them. The plaintiff was the last of approximately forty passengers to disembark. As plaintiff descended she allegedly observed, in midstride, a candy wrapper on one of the stairwells. In her attempt to avoid the wrapper plaintiff lost her balance and slipped. Although the bus driver partially broke her fall, plaintiff still suffered many injuries. In her affidavit, plaintiff stated that the candy wrapper appeared to be slick, like the waxed paper wrappers that are commonly used to package candy. She further stated that she had apprehension that if she had stepped on the paper she might have slipped. After the accident neither the driver nor any passenger could find the paper wrapper. Plaintiff did concede in her deposition that she noticed a "watch your step" sign before she descended the stairwell.

The plaintiff claims that in light of the invitor-invitee relationship that existed between her and the defendant, and the higher duty normally imposed on carriers, the bus driver had an obligation to inspect the stairwells for debris after each passenger disembarked. Because the driver admittedly did not do this, it is argued that he was negligent and his employer liable on the principle of respondeat superior. Plaintiff claims that this higher duty required the driver, at a bare minimum, at least to warn her of the candy wrapper.

This is not the typical slip-and-fall case, one where the plaintiff actually slipped on the debris or foreign substance on the defendant's premises. It is also unusual in that the candy wrapper that created the plaintiff's apprehension is not such an object that normally creates the fear of slipping if stepped on. In fact, the research of both parties did not produce an identical case elsewhere. It is doubtful one exists, and perhaps fair to say that this is a case of first impression.

■ The court is quite aware that in Alabama a carrier is charged with the highest degree of care and protection in providing a reasonably safe means for the assistance and protection of passengers in getting on and off. *See, e.g., Western Railway of Alabama v. Brown,* 280 Ala. 543, 196 So.2d 392 (1967). This rule, however, does not mean that liability will be imposed for every injury resulting from a slip and fall. *See Rowe v. Alabama Power Co.,* 232 Ala. 257, 167 So. 324 (1936); *see also Trask v. New Orleans Public Service, Inc.,* 422 So.2d 1285 (La.App.1982). Ordinarily, before recovery is allowed in suits of this nature, a plaintiff must establish that the

defendant actually knew of the foreign particle or that the particle was on the defendant's premises for such length of time that it is proper to impute notice of it to the defendant. *Atkinson v. Dean,* 198 Ala. 262, 73 So. 479 (1916); *Alabama Gt. S.R.R. Company v. Johnson,* 14 Ala.App. 558, 71 So. 620 (1916). It is agreed that the defendant driver did not have knowledge of the wrapper being on the stairwell. If notice is to be imputed it must be because of the driver's admitted failure to inspect the stairwells after each passenger descended.

■■■■ This court cannot in good faith impose such an onerous burden. Other jurisdictions have not required similarly situated defendants to inspect their premises continuously. *See, e.g., Trask v. New Orleans Public Service, Inc.,* 422 So.2d 1285 (La.App.1982); *Hurst v. New Orleans Public Service, Inc.,* 235 So.2d 103 (La.App. 1970). Their rationale that a carrier is not an absolute insurer of the safety of its passengers is sound. Although the Alabama Supreme Court has not ruled upon this specific issue, the court believes the reasoning of that court in previous suits of this type would lead it to a similar conclusion. No evidence has been proffered as to which passenger dropped the wrapper. The rule of law proposed by plaintiff, that the bus driver has a continuing obligation to inspect the stairwells after each passenger descends, violates this court's sense of fairness. The real basis of any negligence suit is not mere carelessness, but behavior which should be recognized as involving unreasonable danger to others. *See* Prosser, Handbook of the Law of Torts, 4th ed. (1971). In light of this reasoning, for the defendant's conduct to be actionably negligent it must be considered unreasonable. The court is of the opinion that the defendant's conduct was in every respect consistent with the due care which the law requires. To require greater conduct under similar circumstances would, in fact, be unreasonable. Summary disposition is proper, as the court is of the opinion that there is insufficient evidence on which any jury could find a breach of duty. No evidence has been proffered as to which passenger dropped the wrapper. The jury could only speculate.

A continuous duty rule would be impractical and perhaps unduly and unnecessarily expensive for carriers to implement. In buses having both rear and front exits this rule would require that an additional person be hired to make this inspection, or for the driver to prevent passengers from exiting one stairwell until each passenger disembarked from the other stairwell. There is little need to comment on the impracticality of such a requirement. Furthermore, it is common knowledge that a bus driver, after releasing the latch opening the doors, and making his inspection of the stairwells, often remains in the seat while the passengers depart, and that from that perch it would be nearly impossible for him to notice debris dropped by a passenger. As a matter of fact, the only reason the instant driver was in a position to observe the wrapper, assuming it existed, was due to his kindness and thoughtfulness in physically assisting passengers to disembark. A continuous duty rule would require all drivers to leave their seats and position themselves in front of their stairwells. If the rule is limited to the facts of this case, then the instant driver would be penalized for commendable conduct that exceeds the usual scope of his job responsibilities. It would be a grave injustice to allow such a penalty.

Even if a continuous duty rule were applied, there is serious doubt whether the bus driver would have been obligated by it to remove the candy wrapper or warn of its presence. That a candy wrapper is not normally the causation agent in a slip-and-fall case is beyond dispute. Yet, it is contended that the high duty of care that a carrier owes its passengers requires the removal of debris that carries only the mere possibility, however remote, of causing slippage.

■■■ Rules of law and parameters for conduct cannot be premised on mere possibility. To impose liability here, it must be ascertained that the utility of the driver's

conduct was outweighed by the risks and degree of harm posed by the wrapper. *See* Prosser, *supra.* In this court's mind a reasonable person could not find that the wrapper posed such a legitimate risk of danger that it required the driver's responsive conduct. The driver acted as any reasonable man would have under the circumstances, even considering that he was charged with the higher duty of safe carriage owed by a common carrier and its servants.

Another interesting aspect of this slip-and-fall case is that there was no slip. The plaintiff simply did not slip on the wrapper. If in fact the defendant driver acted negligently in failing to remove the wrapper, the question of liability would hinge upon a determination that this negligence proximately caused the plaintiff's injuries. Although the court need not reach this causation issue to dispose of the present motion, it has grave doubts whether liability could be imposed without direct contact. It is inconsistent with common experience for people to slip on particles of this nature. In short, the threshold issue of establishing that the wrapper constituted a danger was never crossed. Accordingly, the court is of the opinion that summary judgment is due to be granted, as a duty to the plaintiff was not breached.

An order consistent with this opinion is being entered.