328 So.2d 911 (1976)
William F. McCORMICK
v.
The FIRESTONE TIRE & RUBBER COMPANY.
No. 7303.
Court of Appeal of Louisiana, Fourth Circuit.
March 16, 1976.
Rehearing Denied April 13, 1976.
Writ Refused June 4, 1976.
*912 D'Antonio & Jones, George H. Jones, New Orleans, Michael E. D'Antonio, for plaintiff-appellee.
Monroe & Lemann, William J. Hamlin, Michael R. O'Keefe, III, New Orleans, for defendant-appellant.
Dillon & Williams, Robert E. Birtel, New Orleans, for intervenor-appellee, American Auto. Ins. Co.
Before LEMMON, GULOTTA and STOULIG, JJ.
GULOTTA, Judge.
Defendant, Firestone Tire and Rubber Company, appeals from a judgment awarding plaintiff damages for injuries sustained when a truck tire, mounted on a defective rim by a Firestone employee, exploded. The explosion occurred after the tire had been mounted on the truck and while it was being inflated by plaintiff. Suit was initially brought against plaintiff's employer, Supreme Catering Company, Inc., and a coemployee. However, plaintiff voluntarily dismissed his suit against both of those parties. Quantum is not an issue in this case.[1]
The facts are that plaintiff's employer operated a fleet of trucks for use in a catering business. Firestone had an agreement with Supreme Catering, whereby Firestone would repair flat tires and mount their new, recapped or repaired tires onto truck rims. On April 25, 1973, a Firestone employee, Lawrence McKinney, was sent to Supreme Catering Company to make needed repairs to flat tires. According to the Firestone employee, four tires were repaired, remounted on the rims, and placed on a tire rack for future use. A fifth tire was repaired and remounted on a defective rim. The Firestone employee, aware that the mounted tire was "extremely dangerous", warned Supreme Catering's mechanic of the defective rim.
Up to this point, the facts are clear and apparently undisputed. However, the occurrences following the warning to the Supreme Catering mechanic are unclear. According to the Firestone employee, the four repaired tires were placed in a rack. The fifth tire was left outside the rack in the repair shop, standing upright and against a wall, but not mixed with the four repaired tires. McKinney further stated that in accordance with the mechanic's instructions, he removed the air from the fifth tire. However, Supreme's mechanic, Clifford H. Cox, testified that when he (Cox) left the shop on the afternoon of the day preceding the accident, the only tires he saw upon leaving, were those lying in the stack. According to plaintiff, he obtained the new tire from the tire rack, noticed that it had some air in it and mounted the tire on the truck. While the tire was being inflated by plaintiff, it exploded, and plaintiff sustained injuries.
It is Firestone's contention on appeal 1) that the Firestone serviceman discharged his duty of exercising reasonable care when he warned the garage foreman of the dangerous nature of the tire and surrendered possession of the tire to Supreme's employees after discovering the defective rim; 2) that assuming, arguendo, the Firestone employee was negligent because of his failure to break down the tire from the defective rim, nevertheless, Firestone is absolved *913 from liability because the proximate cause of the accident was the independent intervening negligent acts of Supreme Catering's mechanic foreman in failing to isolate the tire from Supreme's employees or to warn the employees of the dangerous nature of the tire.
Plaintiff, on the other hand, contends that the Firestone serviceman, once aware of the extremely dangerous instrumentality, had a duty to do more than simply warn the repair foreman. According to plaintiff, after McKinney discovered the defect, a duty was placed on McKinney to deflate the tire and dismount it from the rim. Plaintiff also seeks to invoke the rule that one who exercises control over an extremely dangerous instrumentality or engages in a hazardous or ultrahazardous activity is responsible for all anticipated and natural consequences caused by the dangerous instrumentality or dangerous activity.
The trial judge, in written reasons, stated it was his opinion that the tire was not fully deflated by the Firestone employee, and that to all outward appearances, the new tire could be mounted safely on a truck. The trial judge further concluded that the Firestone employee not only had a duty to warn Supreme Catering Company of the dangerous instrumentality, but had a greater duty to remove the tire from the rim. We agree. Accordingly, we affirm.
Well established in our jurisprudence is the rule that the degree of care owed others increases in relation to the increase in the inherent danger. See Culpepper v. Leonard Truck Lines, 208 La. 1084, 24 So.2d 148 (1945); Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3d Cir. 1974), writs refused, 295 So.2d 817 (La.1974).
In Duxworth v. Pat Caffey Contractor, Inc., 209 So.2d 497 (La.App. 4th Cir. 1968), writ refused, 252 La. 258, 210 So.2d 505 (1968), the court stated that if there exists some inherent danger in the character of an object, a heavy duty of care is required in order to avoid injury. Further, the court in Craig v. Burch, 228 So.2d 723 (La.App. 1st Cir. 1969), recognized that the danger incident to providing a motorist with an unsafe tire is obviously "great".
In Spillers v. Montgomery Ward & Co., Inc., 282 So.2d 546 (La.App. 2d Cir. 1973), modified on appeal, 294 So.2d 803 (La.1974), a truck owner was injured when a "split rim" wheel exploded after Montgomery Ward employees had mounted the tire on the defective rim. In that case, in stating the duty placed upon Montgomery Ward, the court said:
"As previously stated, we find as a fact that the defective condition of the rim should have been discovered on reasonable inspection by one with experience in dealing with split rim wheels. Thus, it was negligence for Montgomery Ward's employee to fail to discover the defective condition of the rim and to mount the tire on the defective rim." (emphasis supplied)
In the instant case, it is undisputed that Firestone, not Supreme, had the contractual duty to "break down" the tires in need of repair and to remount them onto the rims. Supreme employees had the responsibility of mounting the tires on the trucks. Unlike the Montgomery Ward employee in Spillers, the Firestone employee had actual knowledge of the extremely dangerous condition of the tire. However, under the facts and circumstances of the instant case, the Firestone employee is charged with the duty of foreseeing that Supreme employees (other than Cox), not aware of the inherent danger and thinking that the tire was apparently ready for use, might mount the tire on one of the trucks. We conclude, therefore, that McKinney had a greater duty placed upon him than to simply warn the Supreme Catering Company employee of the defective rim. He had a duty to dismount the tire. Failure to do so, under the circumstances, constitutes negligence on the part of the Firestone employee. See Spillers v. Montgomery Ward & Co., Inc., supra.
*914 However, it is Firestone's contention that the Supreme mechanic, Cox, failed to take reasonable precautions to isolate the tire and to warn Supreme's other employees about the dangerous condition of the tire. According to Firestone, Cox's failure constituted an independent, intervening act of negligence which absolves it (Firestone) from liability.
Our courts have held that an initial tort feasor will not be relieved of the consequences of his negligence unless the intervening cause superceded the original negligence and alone produced the injury. See Peats v. Martin, 133 So.2d 920 (La. App. 2d Cir. 1961); Perera v. Johnson, 125 So.2d 493 (La.App. 3d Cir. 1960); Lynch v. Fisher, 34 So.2d 513 (La.App. 2d Cir. 1947). In Waggenspack v. New Orleans Public Service, Inc., 297 So.2d 733 (La. App. 4th Cir. 1974), writ refused, 302 So. 2d 15 (La. 1974), a young boy was instructed by a bus driver to disembark a disabled bus at night. While waiting for another bus, the boy was attacked by a teenage gang. In holding NOPSI liable, the court stated:
"A more seriously disputable situation is presented to the Court as to the proximate as opposed to the remote causation of the injuries to Gerard Waggenspack and the foreseeability of the consequences of a negligent act. The general jurisprudence of Louisiana is that negligence in order to be actionable need not be the sole cause of the harm but in fact that it be a cause for which recovery is sought. * * *"
The court further stated:
"* * * the Court applied the criterion that the person creating the danger could or should reasonably foresee the accident that might occur and if such were the case that he would be liable notwithstanding the intervening cause. * * *"
Under such circumstance, the court concluded the subsequent act of negligence did not relieve the original tort feasor from liability. See also Prosser on Torts (4th ed.), 1971, § 44 on intervening cause.
In the instant case, the trial judge, at the conclusion of his reasons for judgment, stated:
"Assuming, arguendo, that defendant Cox was negligent in not taking further steps to prevent the occurrence of this accident, it cannot be held that this obviates the duty of Firestone through its agent, McKinney. This appears to be a case of concurrent, contributing negligence which resulted in the injuries sustained by Mr. McCormick."
We agree with the result reached by the trial judge. As was stated in Dixie Drive It Yourself System New Orleans Co. v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), when the actionable negligence of two tort feasors contributes in causing harm to a third party, the tort feasors are solidarily liable for the damage.
Accordingly, we conclude that the negligent acts of the Firestone employee was a factual and proximate cause[2] of plaintiff's accident and injury, and Firestone is not absolved from responsibility by the subsequent acts of the Supreme Catering Company employees. The judgment is affirmed.
AFFIRMED.
NOTES
[1] Intervenor, workmen's compensation insurer, American Automobile Insurance Company, intervenes on plaintiff's behalf and seeks reimbursement of the sum of $1,097.15 for workmen's compensation and medical expenses paid. This claim for reimbursement is not disputed.
[2] See the recent Supreme Court case of Pence v. Ketchum, 326 So.2d 831 (La.1976) for a discussion of factual and proximate causation.