# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## CA 07-611

**MARIA M. MUNAR**

**VERSUS**

**STATE FARM INSURANCE COMPANY, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2004-5784
HONORABLE HERMAN C. CLAUSE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## BILLY HOWARD EZELL
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Billy Howard Ezell, Judges.

## REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.

James E. Diaz
Attorney at Law
406 Audubon Blvd.
Lafayette, LA 70503
(337) 233-6200
Counsel for Secondary Plaintiff/Appellant:
Maria M. Munar

**Kenneth Wayne Jones, Jr.**
**Cynthia Gatlin Sonnier**
**Attorney at Law**
**P. O. Box 53290**
**Lafayette, LA 70503-3290**
**(337) 593-9062**
**Counsel for Defendant/Appellant:**
**Lafayette City-Parish Consolidated Government**

**Staci Knox Villemarette**
**Cloyd, Wimberly & Villemarette, L.L.C.**
**P. O. Box 53951**
**Lafayette, LA 70505-3951**
**(337) 289-6906**
**Counsel for Defendants/Appellees:**
**State Farm Insurance Company**
**Kurt W. Schmersahl, Jr.**

**EZELL, JUDGE.**

This is an appeal arising from an auto accident involving a pedestrian. The Lafayette City-Parish Consolidated Government (LCG) appeals the decision of the trial judge in this bifurcated trial, finding that it breached a duty to the pedestrian, Maria Munar, and was fifteen percent at fault for the accident. Mrs. Munar appeals the decision of the jury, assessing her with seventy-five percent of the liability. For the following reasons, we reverse the decision of the trial court in part, affirm in part, and render judgment.

Mrs. Munar is a permanent resident of the United States who originally hails from the nation of Columbia. She was sixty-nine years old at the time of the accident. Because she is not fluent in English, she was taking English lessons at VITA in downtown Lafayette. To get to the lessons, she rode the Lafayette Transit Bus from Acadiana Mall down Johnston Street, one block past Jefferson Street, to the designated bus stop located on the Southeast side of the intersection of Johnston and Convent Street. She would normally disembark at the bus stop, then walk back down Johnston to the Jefferson intersection and cross Johnston at the traffic light controlling the intersection, because a pedestrian protection device controlled the crosswalk, allowing her to cross safely.

On January 29, 2004, Mrs. Munar again followed this pattern to attend her English lessons. However, when she rang the bell to exit the bus at her usual stop, the bus driver, for some unknown reason, failed to stop at the designated spot. After crossing the intersection of Johnston and Convent Street, the bus driver stopped in the middle of the next block, roughly one hundred and fifty feet past the desired bus stop. Mrs. Munar disembarked from the bus without incident or complaint, the bus pulled away, and she began to walk back toward the intersection of Johnston and

Convent, on her way to the Jefferson intersection. After walking half a block back to Convent, Mrs. Munar stopped for approximately thirty seconds to check to see if the intersection was clear for her to cross. She saw Kurt Schmersahl approaching from her left, but felt she had time to get across the intersection. As she stepped into the street, she was bumped by Mr. Schmersahl as he executed a right turn from Convent onto Johnston. Mrs. Munar fell to the ground, suffering injuries to her right leg and left wrist.

Mrs. Munar filed this suit against Mr. Schmersahl and the LCG as a result of the accident. She claimed LCG breached its duty to her as a passenger by dropping her off at a spot other than a designated bus stop. The trial judge in this matter agreed, finding that LCG was fifteen percent at fault for her injuries, and assessed damages in the amount of $39,047. The trial judge submitted the remaining eighty-five percent of the fault to the jury. After hearing testimony from several sources, including both parties and an independent witness, the jury found that Mrs. Munar was seventy-five percent at fault for the accident and that Mr. Schmersahl was ten percent at fault. However, the jury found that no injuries were sustained and awarded no damages. Mrs. Munar filed a motion for a judgment notwithstanding the verdict (JNOV) on the issues of liability and damages. The trial judge denied the motion as to liability but granted a JNOV as to damages. He found that Mrs. Munar had suffered the $39,047 in damages he had previously awarded in his part of the bifurcated trial against LCG, subject to reduction based on comparative fault. Costs of the trial were apportioned at seventy-five percent to Mrs. Munar and ten percent to Mr. Schmersahl. LCG was exempt from paying any court costs in this matter.

From these decisions, Mrs. Munar and LCG appeal. Mr. Schmersahl answers, seeking additional attorney fees for work done on appeal. We shall address the

2

claims of LCG first.

## LCG

On appeal, LCG asserts three assignments of error: that the trial court erred in finding that the bus driver owed a duty to Mrs. Munar, as a passenger, at the time of the accident; in finding a breach of that duty; and in finding that any breach was the cause of the accident. Because we agree with LCG that it no longer had any duty to Mrs. Munar as a passenger at the time of the accident, we need not address the other two assignments of error.

In contracting to transport passengers for hire, public carriers undertake grave obligations. *Gill v. Doe*, 479 So.2d 36 (La.App. 4 Cir.1985). It is well-settled that although a common carrier is not the insurer of the safety of its fare-paying passengers, it nevertheless is required to exercise the highest degree of care. As such, when an injury to a passenger occurs, the burden shifts to the defendant carrier to show that it was entirely free of even the slightest negligence contributing to the resulting injury. *King v. King*, 253 La. 270, 217 So.2d 395 (1968). This doctrine "applies in all circumstances where a passenger suffers an injury when boarding, traveling aboard, or disembarking a common carrier's vehicle." *Amos v. St. Martin Parish Sch. Bd.*, 00-808, p. 3 (La.App. 3 Cir. 12/6/00), 773 So.2d 300, 302 (citations omitted). However, as noted by this court in *Teer v. Continental Trailways, Inc.*, 341 So.2d 1306, 1308 (La.App. 3 Cir.1977):

> [O]nce a passenger freely disembarks at his chosen destination free from harm, his status as passenger, and the public carrier's contract to transport for hire, cease. At that point the public carrier only owes such person the duty of ordinary care--it is under no duty to warn the former passenger of "a danger which is apparent, obvious and known to every person in good mind and sense" (*Deason v. Greyhound Corp.*, 106 So.2d 348 (La.App. 1 Cir., 1958), nor to personally transport, convey, or assist the former passenger in crossing a street or highway.

3

In this case, it is undisputed that Mrs. Munar alighted safely from the bus. Further, she securely walked one hundred fifty feet from the place where she alighted to the intersection of Convent and Johnston, where she testified she waited over thirty seconds before entering the road. She claims the duty extended because the LCG bus driver's manual stated that a bus driver is to drop passengers off at bus stops only. However, the same manual states that if a stop is missed, the driver is to drop the passenger off at the next stop, or the next safe spot. As noted above, Mrs. Munar was let off at a safe location, where she exited the bus without incident or complaint. In fact, she testified that being dropped off in that spot did not bother her at all. We find Mrs. Munar's claims to be completely devoid of any merit and that LCG's duty to her as a passenger ended at the time she safely disembarked from the bus. The trial court's decision, holding LCG fifteen percent at fault for Mrs. Munar's accident is, accordingly, reversed.

### Maria Munar

Mr. Munar also appeals, asserting six assignments of error. She claims that the trial court erred in not admitting evidence of other accidents involving Mr. Schmersahl; that the jury erred in its apportionment of fault; that the trial court erred in not granting a JNOV on the issue of liability; that the jury failed to award damages; that the trial court awarded inadequate damages; and that the trial court erred in its apportionment of costs. The fourth assignment of error, concerning the failure of the jury to award damages, was rendered moot by the JNOV granted by the trial court on that issue. Because Mr. Schmersahl has not appealed the JNOV, we need not address that assignment of error.

Mrs. Munar first claims that the trial court erred in failing to admit evidence concerning other auto accidents in which Mr. Schmersahl was involved. In *McIntosh*

4

*v. McElveen*, 04-1041, pp. 9-10 (La.App. 3 Cir. 2/2/05), 893 So.2d 986, 994, *writ denied*, 05-528 (La. 4/29/05), 901 So.2d 1069 (citations omitted), a panel of this court observed that a "trial court is accorded vast discretion concerning the admission of evidence, and its decision will not be reversed on appeal absent an abuse of that discretion." Evidence of other crimes, wrongs, or acts is not admissible to prove the character of the person "in order to show that he acted in conformity therewith." La.Code Evid. art. 404(B). Even if the evidence is independently relevant, it "may be excluded if its probative value is substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." La.Code Evid. art. 403. While Mr. Schmersahl did have other accidents on his record, the trial judge found that a pattern of habit did not arise, so the prior accidents could not be used to show he was inattentive at the time of the accident that is the basis of this suit, as their admission would prejudice the jury against Mr. Schmersahl. The record does not demonstrate abuse of the trial judge's discretion in denying the introduction of the evidence Mrs. Munar sought. Therefore, this assignment of error is without merit.

Next, Mrs. Munar claims the jury erred in its apportionment of fault. Again, we disagree. It is well established that an appellate court cannot overturn the factual findings of a trial court unless, after careful review of the record as a whole, the appellate court finds that the factual conclusions of the trier of fact were manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). The appellate standard of review is both constitutionally based and jurisprudentially refined.

> This state's appellate review standard, which is constitutionally based and jurisprudentially driven, is that a court of appeal may not overturn a judgment of a trial court absent an error of law or a factual finding which is manifestly erroneous or clearly wrong. Accordingly, appellate courts are charged with a duty to affirm the trial court's decision absent an error of law or a factual finding which is manifestly

5

erroneous or clearly wrong.

*Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880, 882 (La.1993).

If there is conflict in the testimony, the appellate court cannot substitute its own judgment. The appellate court can only review the record as a whole to ensure that the judgment of the trial court was reasonable. "[T]he issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one." *Id*. at 882.

> [I]f the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. . . .[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.

*Rosell*, at 844.

The record shows that the jury heard conflicting testimony from both the parties. Additionally, neither the testimonies of the independent witness or the police on the scene truly synced with either party. There did, however, exist a reasonably factual basis for the jury to come to its conclusion that Mrs. Munar was mostly to blame for the accident. Both Mr. Schmersahl and the police reported that he was beyond the stop sign, already into his turn, and entering Johnston when he struck Ms. Munar. The location of Mr. Schmersahl's truck after the accident placed Mrs. Munar outside of the crosswalk. Furthermore, Mrs. Munar testified that she saw Mr. Schmersahl coming, but still entered the roadway despite that fact. We can find no error in the finding of the jury that Mrs. Munar was seventy-five percent at fault for the accident. However, as we have ruled that LCG can not be held at fault, fifteen percent of the fault remains. We find that this additional percentage of fault should be assessed between the parties at five percent to Mrs. Munar and ten percent to Mr. Schmersahl. Accordingly, we render judgment finding Mrs. Munar eighty percent at

fault for the accident and Mr. Schmersahl twenty percent liable.

Mrs. Munar next claims that the trial judge erred in failing to grant a JNOV as to the jury's determination on liability. The criteria applicable to our review of the denial of Mrs. Munar's motion for JNOV was set forth by the Louisiana Supreme Court in *Peterson v. Gibraltar Savings and Loan*, 98-1601, 98-1609, pp. 5-6 (La. 5/18/99), 733 So.2d 1198, 1203, *rehearing in part,* (La. 9/3/99), 751 So.2d 820:

> JNOV is warranted only when the facts and inferences, viewed in the light most favorable to the party opposing the motion, is so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict; the motion should be granted only when evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. *Anderson v. New Orleans Public Service, Inc.*, 583 So.2d 829 (La.1991); *Scott v. Hospital Service District* No. 1, 496 So.2d 270 (La.1986). Refusal to render a judgment notwithstanding the verdict (JNOV) can only be overturned if it is manifestly erroneous. *Delaney v. Whitney National Bank*, 96-2144, 97-0254 (La.App. 4 Cir. 11/12/97), 703 So.2d 709[,] *writ denied*, 98-213 (La.3/20/98), 715 So.2d 1211.

As we have previously held that there existed a reasonable factual basis for the findings of the jury, it is clear that the evidence did not point so clearly in favor of Mrs. Munar that the JNOV should have been granted. This assignment of error is devoid of merit.

Mrs. Munar next claims that the trial judge erred in granting insufficient damages. The trial judge, both in his part of the bifurcated case against LCG and in his granting of the JNOV in favor of Mrs. Munar on the issue of damages, found that Mrs. Munar had suffered damages in the amount of $39,047 as a result of the accident. This court, in *Guillot v. Doe*, 03-1754, p. 5-6 (La.App. 3 Cir. 6/30/04), 879 So.2d 374, at 379-80 (footnotes omitted; alteration in original), when discussing the correct procedure for reviewing damage awards, stated the following:

> An appellate court should rarely disturb an award of damages due to the great and, even, vast discretion vested in the trial court. We can

7

disturb such awards, only, when the trial court clearly abused its discretion.

Reasonable people often disagree over the appropriate measure of general damages in a particular case. Yet, "[i]t is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award."

We should not rely on a comparison of prior awards in cases with similar medical injuries to decide whether the trial court abused its discretion. "The primary considerations in assessing damages are the severity and duration of the injured party's pain and suffering."

The trial judge noted in carefully thought out reasons for judgment that Mrs. Munar had, indeed, proved she sustained injuries as a result of the accident, most notably to her left wrist and right ankle. She had to be transported from the scene to the emergency room in an ambulance. However, her injuries turned out to be relatively minor. She suffered mainly a sprained wrist, contusions, and a chip fracture on her right foot. The accident also aggravated some pre-existing degenerative problems in her back and caused her to suffer some loss of enjoyment of life. The trial court awarded $20,000 in general pain and suffering damages, $7,500 for future loss of enjoyment of life, and $11,547 in medical expenses. We can not find any abuse of discretion in this award. This assignment of error is also without merit.

Finally, Mrs. Munar claims that the trial judge erred in assessing her with seventy-five percent of the court costs. Mr. Schmersahl was taxed with ten percent of the costs of trial. LCG was exempt from paying any court costs in this matter. Louisiana Code of Civil Procedure Article 1920 provides, in pertinent part, that "the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable." "The trial court may assess costs against any party in the proportion it deems equitable, even against the party prevailing on the merits." *Greene v. Greene*, 94-79, p. 4 (La.App. 3 Cir. 10/5/94), 643 So.2d 891, 894. A trial

8

court's assessment of costs can be reversed only upon a showing of an abuse of discretion. *State ex rel. Guste v. Nicholls College Found.*, 592 So.2d 419 (La.App. 1 Cir. 1991), *writ denied*, 593 So.2d 651 (La.1992). In this matter, Mrs. Munar was assessed costs of court in accordance with her seventy-five percent of fault, as assessed by the jury. While we find that the assessment of trial costs was not an abuse of the trial court's discretion, we hereby render judgment assessing trial costs to reflect the allocation of fault as rendered in this opinion, eighty percent to Mrs. Munar and twenty percent to Mr. Schmersahl, as necessitated by our findings pertaining to LCG.

### Kurt Schmersahl

Finally, Mr. Schmersahl answers the appeal, seeking attorney fees for additional work done on appeal. Because he was not entitled to, nor awarded attorney fees by the trial court, we hereby deny his request.

### Decree

The decision of the trial court assessing LCG with fifteen percent of the liability in this matter is hereby reversed. Judgment is hereby rendered finding Mrs. Munar liable for eighty percent of the damages she suffered and Mr. Schmersahl liable for the remaining twenty percent. Judgment is also hereby rendered assessing costs of the trial at eighty percent to Mrs. Munar and the remaining twenty percent to Mr. Schmersahl. The judgment of the trial court is hereby affirmed in all other aspects. Costs of this appeal are assessed against Mrs. Munar.

**REVERSED IN PART; AFFIRMED IN PART; AND RENDERED.**